# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

## COMPLAINT FORM
As ammended on 9-27-2013

Lundstedt, Peter (Pro Se) Plaintiff

v.

Case No. 13-CV-1423 A W T

DEUTSCHE BANK National Trust Company
- Trustee for Long Beach Mortgage Loan
  Trust - Owned by JP Morgan Chase

JP Morgan Chase
- Owner of WAMU Washington Mutual

- Select Portfolio Servicing, Inc., SPS – Formerly
  Fairbanks Capitol 2004

*FILED 2013 SEP 30 P 3:44 US DISTRICT COURT HARTFORD CT*

## A. PARTIES

1. **Lundstedt, Peter (Pro Se)** (Plaintiff) is a citizen of **Connecticut** (State) who presently resides at **15 Lafayette Ct. 3A, Greenwich, CT 06830** (The property in dispute) (mailing address)

2. Defendant **DEUTSCHE BANK National Trust Company** — Germany / New York (State)
   whose address is **Taunusanlage 12, Frankfurt am Main 60325 Germany / 345 Park Avenue New York, NY 10154**

3. Defendant **JP Morgan Chase Owner of WAMU / Long Beach Mortgage Loan Trust** — New York (State)
   whose address is **270 Park Avenue New York, NY 10017**

4. Defendant **Select Portfolio Servicing, Inc., SPS - Formerly Fairbanks Capitol Nov 12, 2003** — Utau (State)
   whose address is **3815 West Temple, Salt Lake City, UT 84115-4412**

## B. JURISDICTION

**1. Contract** - The Open-End Mortgage Deed states on page 10 Number 16, That this Security Instrument shall be governed by federal law... (Please See Exhibit A).

**2. Diversity** - Connecticut Long Arm Statute CT ST 52-59b (Please See Exhibit B)

18 U.S.C. § 1348, which prohibits "defraud[ing] any person with any security of an issuer with a class of securities registered under section 12" of the Securities Exchange Act of 1934;

18 U.S.C. § 1964, which provides for civil remedies for Racketeer Influenced and Corrupt Organizations (RICO) violations;

**The mail fraud statute,** 18 U.S.C. § 1341 (2009), is the grand dame of the fraud statutes, and the wire fraud statute, 18 U.S.C. § 1343 (2009)

The statute criminalizing the interstate transportation of funds obtained by fraud or of stolen property (commonly referred to as ITSP), like the other fraud statutes, is a classic statute to use in fraud cases. 18 U.S.C. § 2314 (2009). Like mail and wire fraud cases, there are lots of case law and pattern jury instructions.

The statute requires that the property taken or the money obtained by fraud have a value of $5,000 or more. This is not a problem in mortgage fraud cases, but it is an element of the offense. The statute also requires that the defendant have knowledge that the property was taken by fraud, although specific intent is not required.

A violation of 18 U.S.C. § 1014 (2009), which prohibits false statements to a financial institution, has the same advantages, disadvantages, and considerations as a violation of § 1344 (the bank fraud statute). Like the bank fraud statute, the definition of financial institution was amended by FERA, effective May 20, 2009. The first is 12 U.S.C. § 1833a (2009), a civil penalty statute that was passed as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 **(FIRREA)** in response to the 1980s savings and loan crisis. See Pub. L. No. 101-73, § 951, 103 Stat. 183, 498–99 (1989). The second is the Civil False Claims Act (FCA). See 31 U.S.C. § 3729(a) (2009). The third is injunctive relief available to enjoin fraudulent activities. See 18 U.S.C. § 1345 (2002).

**Restitution**   (Please See Exhibit M)

**Victims in mortgage fraud cases are statutorily entitled to restitution. 18 U.S.C. § 3663A.** Unlike loss calculations for purposes of sentencing, which are determined based on a "reasonable estimate of loss" within broad ranges, courts typically require something more concrete for restitution orders in terms of a provable amount based on evidence proven by a preponderance of the evidence. Generally, this will require cooperation and information from the victims. In the context of victim institutions (some of which may be in receivership or may have been sold), early identification and contact is critical. It may also be necessary to explain differences between compensable restitution under the Mandatory Victim Restitution Act 18 U.S.C. § 3663A and compensable damages in a civil action (which remain available even after a criminal restitution order).

The process of identification and notification can be a time-intensive and lengthy process. In order to address this reality, while also moving the criminal proceedings forward expeditiously, prosecutors may seek to defer the issue of restitution for a short period of up to 90 days following sentencing. 18 U.S.C. § 3664(d)(5).

**Mortgage fraud is a crime** in which the intent is to materially misrepresent or omit information on a mortgage loan application to obtain a loan or to obtain a larger loan than would have been obtained had the lender or borrower known the truth.

## B. JURISDICTION

**In United States federal courts, mortgage fraud is prosecuted as wire fraud, bank fraud, mail fraud and money laundering,** with penalties of up to thirty years imprisonment. [1] As the incidence of mortgage fraud has risen over the past few years, [2] states have also begun to enact their own penalties for mortgage fraud. [3] Mortgage fraud is not to be confused with predatory mortgage lending, which occurs when a consumer is misled or deceived by agents of the lender. However, predatory lending practices often co-exist with mortgage fraud.

**The Federal Trade Commission Act (FTC Act) declares that unfair or deceptive trade practices are illegal.** See 15 USC § 45(a) (FTC Act Section 5). This letter confirms that the Federal Deposit Insurance Corporation (FDIC) intends to cite state nonmember banks and their institution-affiliated parties for violations of FTC Act Section 5 and will take appropriate action pursuant to its authority under Section 8 of the Federal Deposit Insurance Act (FDI Act) when unfair or deceptive trade practices are discovered. FDIC enforcement action against entities other than banks will be coordinated with the Federal Trade Commission, which also has authority to take action against nonbank parties that engage in unfair or deceptive trade practices.

In order to determine **whether a practice is "unfair," the FDIC** will consider whether the practice "causes **or is likely to cause substantial injury** to consumers which is not reasonably avoided by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). By adhering to this tenet, the FDIC will take action to address conduct that falls well below the high standards of business practice expected of most banks and the parties affiliated with them.

§ 806. **Harassment or abuse** .

A debt collector may not engage in any conduct **the natural consequence of which** is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, **reputation**, or property of any person. (a statement of claim).

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3) of this Act.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) **Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously** with intent to annoy, abuse, or harass any person at the called number. (a statement of claim).

(6) Except as provided in section 804, the placement of telephone calls **without meaningful disclosure** of the caller's identity. (a statement of claim).

[Codified to 15 U.S.C. 1692d]  [Source:  Section 806 of title VIII of the Act of May 29, 1968 (Pub. L. No. 90-321), as added by the Act of September 20, 1977 (Pub. L. No. 95-109; 91 Stat. 877), effective March 20, 1978]

## B. JURISDICTION

**CONNECTICUT PA 01-34 — AN ACT CONCERNING ABUSE HOME LOAN LENDING PRACTICES   October 24, 2002 2002-R-0855**

Can not: - make the loan unless the lender reasonably believes that the borrower will be able to make the loan payments, based on the borrower's income, debts, employment status, and other financial factors. The borrower is presumed to be able to make the payments if his monthly debts, including the mortgage, are not more than 50% of his gross monthly income;

Can not: - advertise that refinancing preexisting debt with a high-cost home loan will reduce a borrower's monthly debt payments without also disclosing that the loan may increase the borrower's total number of payments and the total amount the borrower will pay over the term of the loan;

Can not: - recommend or encourage default on an existing loan or debt before closing on a refinancing high-cost home loan;

Can not: - make a high-cost home loan that refinances an existing loan unless the new loan will truly benefit the borrower;

Can not: - make a high-cost home loan with an unconscionable interest rate. The interest rate must be based on appropriate factors, such as creditworthiness, other risk-related standards, and sound underwriting, or it may be considered unconscionable.

## C. NATURE OF THE CASE

Your Honor,

I am not a "Sue'er". I have never sued anyone. Yet I have been backed into a corner and have no other options. Having been in the equity management business (not the mortgage or fixed income business...I'm a stock guy only, and frankly, better than the Defendant's (Please See Exhibit S). I have made many **attempts to settle** this fairly (where they could actually make money) but Defendant's, after six years, are unremitting in their injurious pursuit of me, (a statement of claim) to take equity of my property while writing off $1 million with their insurance company. I told Defendant's many times of my issues with Washington Mutual regarding the integrity of the loans' creation and how it wiped out my capital base, destroyed my credit rating and created permanent injuries (a statement of claim). (Please See Exhibit C). You see, I just want full employment rather than this under-employment and I found a way to help them make money, billions, and it would allow me to afford and rapidly pay off the loan in less than two years. A win win offer I called it. But they are blind. And if they can't understand what I do then they don't even belong in the business (Please See About Plaintiff Exhibit T).

Statute of limitations is in effect because I complained many times beginning within a year after the signing of the contract. (Please See Exhibit C1).

Legal Assistance Resource Center of Connecticut suggested I refer my complaint to the Connecticut Attorney General. The Connecticut Attorney General referred me to the Connecticut State Banking Department's special mortgage fraud section (Please See Exhibit D). When I sent in my complaint they said they did not have jurisdiction because Defendant's were regulated federally. So I sent a complaint to the OCC Comptroller of Currency (Please See Exhibit E). They submitted an inquiry to JP Morgan Chase who contacted me, the Plaintiff, and said they were looking into the credit score fraud complaint. I received a stack of documents relating to signed documents, appraisals, etc., but nothing on the credit score requirements and calculations of Long Beach Mortgage Loan Trust 2006-10. **Meanwhile a Law Date of Oct 22, 2013 looms** of which I Motion to Vacate and Dismiss with Prejudice, Reopen, or at least give an extension of time to Feb, 22nd, 2014. On 9-5-2013 Plaintiff sent to the Defendant and Special Portfolio Servicing, Inc. an official **RESPA** Qualified Written Request; Complaint; Dispute Of Debt; Validation Of Debt; And TILA Request. They have 60 days to return it which is Nov 5, 2013, past the Oct 22, 2013 Law Date (Please See Exhibit E1). On 9-25-2013 I filed a complaint with the Greenwich, CT police which opened Case # 13-35071. Two Greenwich, CT Financial Crimes Detectives with direct contacts to federal financial crimes investigators have been assigned to the case, Detective McKiernan and Detective Solomon.

The problem began with making the loan in the first place on 9-25-2006, which turned out to be a bad result for the Plaintiff because the events that followed just snowballed, getting worse and worse as time went on with a domino effect. 'That', is where the Plaintiffs' pain and suffering came from and continues to come from (a statement of claim), (i.e. **'imprisoned in debt** or foreclosure' prison for six years, in fact **worse than actual prison:** In jail, granted an unpleasant place, you know you will have a roof over your head, you know where you are going to sleep and eat with all amenities and health care paid for to the tune of $150,000.00 per inmate per year spent by the state. Prisoners have **'closure'** whereas with debt or 'foreclosure imprisonment' you don't know, day after day, whether or not you will have a place to live and whether or not you will even live through it due to the extra-ordinary stress, which is constant). It has another name: **spiritual murder** (a statement of claim).

This is an important case just on those merits alone for this affects millions of people (a statement of claim). The evidence is clear that the mortgage and banking industry lost sight of that, for this and any consumer, the mortgage financing of their home is an extremely important matter and the financing process needs to be clear and transparent rather than hurried. Defendant's have and are committing spiritual murder individually and **spiritual genocide** world wide. Yes the courts are supposed to protect the banks as one lawyer from Connecticut advised me, but banks are people and those people, the defendant's, must be made to forever remember that you can't destroy people's lives with impunity. Any potential judgment against defendants, although painful, will make them better in the future and benefit the individual consumer on a larger scale.

## C. NATURE OF THE CASE

It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by **fraud**, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties.

**Defendant's WAMU and Long Beach Mortgage Loan Trust 2006-10** "rushed" to get Plaintiffs loan approved and "rushed" to place it in the Defendant's' Long Beach investment portfolio now owned by JP Morgan Chase (a statement of claim). At the same time Defendant's rationalized the loans' high interest rate by telling the Plaintiff that he could "refinance" at a lower rate in six months time at better terms (a statement of claim).

When I complained in Stamford Superior Court about the actual wrong doing, two prior Judges (Hon. Provodator and Hon. Mintz), stopped me from going further and said that 'that was something to be heard at trial'. Eventually the **case was dismissed** (Please See Orders in Exhibit F).

Then in June of 2013, JP Morgan Chase (the servicer and owner of the mortgage security Long Beach holding Plaintiffs mortgage) for reasons unexplained, basically "bunt kicked" the (potential 'Hot Potato') loan out over to Special Portfolio Servicing, Inc. (SPS), (who, by the way, changed their name from Fairbanks Capital Corp. in c. 2004 due to a $40 million FTC fine and settlement on **Nov 12, 2003** for illegal foreclosure activities) (Please See Exhibit G).

Meanwhile, Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-10 is trying to foreclose on my home of 18 years, and a **Law Date of Oct 22nd 2013** has been set by Stamford Superior Court Judge Truglia, and a date that is motivating me to pursue action at this time. The current Defendant's, and maybe even the people inside the court, want this date to pass because there is no reverting on a foreclosure after the law Date in Connecticut, to my knowledge.

I filed a **counterclaim on Sept, 12 2013** in Stamford Superior Court describing my defenses supporting lack of jurisdiction or standing and injury (i.e. there is no jurisdiction if the contract was not valid from the very start due to fraud (i.e. deliberately lowering my credit score to fit into a sub-prime security owned by Defendant's, and unsuitability by the Defendant's i.e. I should have gotten a much lower interest rate rather one I could not afford after six months which would have avoided six years of suffering by the Plaintiff, among other complaints). (Please See Exhibit N)

But something is wrong at the Stamford Superior Court, for which I have the utmost esteem for. I received two or more Court **Orders without named parties** and two or more **Orders without Orders**. On 8/1/2013 an Order on FST-CV-13-6018732-S was issued granting a motion for default but no party was listed, and on 8/20/2013 for FST-CV-08-5009697-S an Order with no Order was issued. It just said see Order 137.86. Then on 8/21/2013, for FST-CV-08-6018732-S, an Order for Strict Foreclosure was filed. Again on 8/22/2013 an Order on FST-CV-13-6018732-S was issued granting a motion for default but no party was listed. And again on 8/30/2013 an Order on FST-CV-13-6018732-S was issued granting a motion for default but no party was listed. (a statement of claim) (Please See Orders in Exhibit H).

Something even more surprising happened in Court under Stamford Superior Court Judge Truglia, for whom I have the greatest respect. But Judge Truglia **didn't even read my counterclaim** which he issued an Order denying it. (a statement of claim) How do I know that? Because under the section Special Defenses in my filed counterclaim it says that:

> Defendant is a sole small business owner and a Veteran with a 30% disability who was, at the time, (was on six VA medications that cause dizziness), who suffered 3 broken vertebra documented while serving in the United States Armed forces, but now has had to apply for 100% disabled status to the Veterans Administration through the Disabled American Veterans DAV. Proof available on request due to Defendant's' sensitive medical records.   (Please See Exhibit Q)

## C. NATURE OF THE CASE

You see, Judge Truglia didn't even read my counterclaim because he made me stand up for what seemed like two agonizing hours (a statement of claim). I had sat down initially but he didn't like one of my answers when I couldn't remember a simple question (due to six VA medications) (a statement of claim) he asked on who the servicer was that, from my quote, JP Morgan Chase "bunt kicked" my loan to. At that point the judge called for a half hour recess for unknown reasons. Transcripts will indicate when I referred it to Plaintiffs' attorney where upon I was ordered to stand up. It was Special Portfolio Servicing, Inc. I don't like using that as an excuse for anything, but it is what it is. And I don't regret the injuries because I did it for a good cause. (A Veteran is someone who basically wrote a blank check to the United States Government for the amount up to and including his life). I might suggest Plaintiff try all six meds at once and then try to give a presentation. Frankly, there are times I can't even remember if I took a particular prescription ten seconds after I swallowed it. The VA doctor didn't seem concerned.

But here is the most important event. Remember back to when the Orders had no party named? Well, I thought that it was a little fishy so I **sent in a reply** or defense thinking it was me who was in default **(Please See Exhibit I)**.

I then called the clerk in Stamford and asked if I was in default. They said no although two other parties were. On 9/16/2013 in Judge Truglias court room, (while standing) (a statement of claim), I was given the opportunity to respond. I challenged the Plaintiffs on standing and thus no jurisdiction due to alleged fraud, etc. The Plaintiff was directed to show me copies of assignments, etc. **I had asked to see the originals** but was denied (a statement of claim) as I recall. In fact, every argument I had was denied. So I continued to move forward on other subjects pertaining to standing outlined in my counterclaim. But Judge Truglias denied the use of any argument in the counterclaim. So I asked why I couldn't use my counterclaim upon where Judge Truglias **said I could not use that because I was in default and you can't go forward with a counterclaim while in default**, at which time I said Oh, I didn't know I was in default. See transcripts. At this point in this case res judicata and collateral estoppel used as a defense by the Defendant's can not be applied fairly.

I began to wonder, **after six years of wear and tear** on my psyche and body (**six years lost forever**) (a statement of claim), why is there such a 'rush' to bring this case to judgment? What was going on? Were they colluding in some way? When I got home, I called the clerk and asked again if I was in default at which time the clerk became almost hostile. So I hung up and called another clerk later that day. Shockingly, the clerk said that I was not in default but rather it was, incredibly, **the Plaintiff who was in default**! So how is it then, that the Plaintiff can move ahead on a case where he himself is in default but I can't? I now know why juries are so important.

And so it is now that I stand before you, as a Citizen of these United States, and, having never sued anyone, respectfully demand a jury trial, if not in the name of justice alone.

Sincerely

Peter Lundstedt
Plaintiff
9-25-2013

## D. CAUSE OF ACTION

I allege that the following of my constitutional rights, privileges, or immunities or my rights under a federal statute have been violated and that the following facts form the basis of my allegations:

**Claim I:** Plaintiff suffered six years of continual stress creating permanent psychological (PTSD) and physical injuries (exasperation of military injuries, hypertension and high blood pressure). (a statement of claim).

**Additional Facts**

Plaintiff is a sole small business owner and a Veteran with a 30% disability who was, at the time, on (six VA medications that cause dizziness), who suffered 3 fractured vertebra from jumping out of planes and other accidents documented while serving in the United States Armed forces, but now has had to apply for 100% disabled status, in part because of Defendant's behavior, to the Veterans Administration through the Disabled American Veterans DAV. Proof available on request due to Defendant's' sensitive medical records.

The loan and purported fraud originated on, and continually thereafter, 9/25/2006, and constitutes unfair or deceptive practices in violation of the consumer protection laws of the United States and Connecticut. (a statement of claim)

The Defendant's conspired and knowingly made or presented false and fictitious claims to Plaintiff by using a credit score 100 points lower than Plaintiffs true score (a statement of claim).

In connection with matters within the jurisdiction of the United States, the Defendant's knowingly and willfully engaged in conduct that: (a) falsified, concealed or covered up by artifices, schemes or devices, material facts, (b) made statements and representations that violate 18 U.S.C. § 1001(a), and (c) made and Case 1:12-cv-00361-RMC Document 4-1 Filed 03/14/12 Page 43 of 99 44 used false writings or documents knowing the same to contain materially false and fictitious statements and entries. In other words, Defendant's lied to get Plaintiff to sign a contract that was made under false information and conspired with other Defendant's to knowingly place a fraudulent loan into an SEC regulated security (a statement of claim).

In so doing, the Defendant's acted knowingly; that is, the Defendant's possessed actual knowledge that the information, statements and representations were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the information, statements and representations; or acted in reckless disregard of the truth or falsity of the information, statements and representations (a statement of claim).

## DEFENDANT'S COURSE OF ACTION

1. The acts or practices described in this complaint occurred in trade or commerce in the United States and Connecticut. **(Please See CT v. Countrywide in Exhibit J).** (a statement of claim).

2. Whenever reference is made in this complaint, to any act or practice of a Defendant, such allegation shall be deemed to mean that the principles, officers, directors, employees, agents or representatives of such Defendant did, or authorized, such act or practice, on behalf of such Defendant while actively engaged in the scope of their duties. (a statement of claim)

3. Whenever reference is made in this complaint to any act, practice or conduct of a Defendant, such allegation shall be deemed to mean the act of that Defendant acting individually or jointly, through an agreement to so act or through that Defendant's provision of assistance or encouragement in accomplishing an unfair act or practice, given either in breach of that Defendant's own duty or with knowledge that the other Defendant's were wrongful. (a statement of claim)

4. In its public statements Defendant's expressly or impliedly represented that it made loans to consumers that were suitable and affordable, and made its lending decisions based upon a consumer's credit and ability to pay.

## D. CAUSE OF ACTION

5. On information and belief, prior to making the loan, the Defendant's routinely represented to Plaintiff that the loan being offered was suitable, was the best for the Plaintiff, that the Plaintiff was making the right decision to enter into a loan with the Defendant's, and that the Plaintiff could refinance at a later date and on terms more favorable to the Plaintiff. (a statement of claim)

6. The Defendant's' acts and practices, as described herein, are and were oppressive, unethical, immoral and unscrupulous. (a statement of claim)

7. The Defendant's' acts or practices, as described herein, caused substantial injury to Plaintiff, in that Plaintiff entered into a mortgage loan for which Plaintiff could very obviously, not afford payment, and suffered and risked suffering, the loss of Plaintiffs home an/or foreclosure. (a statement of claim)

8. The Defendant's engaged in the acts or practices alleged herein when they knew, or should have known, that their conduct was unfair or deceptive in violation of United States Law and Conn. Ge. Stat. 42-4110b(a). (a statement of claim)

9. At all times relevant hereto, Defendant's were licensed in Connecticut by the Connecticut Department of Banking.

10. By engaging in the aforesaid acts and practices, the Defendant's have also made untrue and misleading statements of material fact, omitted material facts necessary in order to make other statements of material fact, in light of the circumstances under which they were made, misleading and concealed, suppressed, intentionally omitted or otherwise intentionally failed to disclose material particulars of loan transactions. (a statement of claim)

11. The acts or practices described herein occurred in trade or commerce in The United States and Connecticut.

12. The Defendant's publicly represented that Defendant's entered into loan modifications that would provide sustainable affordability and that they agreed to home retention standards to help consumers in financial difficulty to establish suitable repayment plans or other solutions.

13. On information and belief, contrary to such representations, the Defendant's demanded that Plaintiff enter into loan modifications and/or repayment plans which were **not sustainable, not affordable or suitable**. (a statement of claim)

14. The Defendant's acts or practices, as described herein, were material to Plaintiffs decisions as to whether to reinstate their loans with and/or enter into repayment plans and loan modifications with Defendant's for mortgage loans that were not truly available to Plaintiff. (a statement of claim)
**(Please See Connecticut v. Countrywide Exhibit J).**

15. The Defendant's have admitted Criminal Fraud. Committed **mail fraud** and wire fraud.
**(Please See Exhibit L).**

16. The loan in question originated on 9-25-2006. The Defendant Deutsche Bank knew before and after 9-25-2006 of the problems in the mortgage business. (a statement of claim)  On 7-19-2004 Defendant's made statements to the US Government, OCC, FDIC, Federal Reserve and the SEC on "Sound Practices Regarding Complex Structural Finance Activities. **(Please See Exhibit K).**

17. On 12-21-2010, The Defendant Deutsche Bank admitted to criminal fraud and agreed to pay a $553.6 million settlement. **(Please See Exhibit L).**

## D. CAUSE OF ACTION

18. Defendant's have and had unclean hands for refusing to disclose past criminal convictions. **(Please See Exhibits L, O and P).** (a statement of claim)

'The doctrine of unclean hands expresses the principle that where a Plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the Defendant's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply.' (Internal quotation marks omitted.) Thompson v. Orcutt, 257 Conn. 301, 310, 777 A.2d 670 (2001).

19. Defendant's blatantly disregarding the common-law duty of good faith and fair dealing by reckless abandonment of their fiduciary responsibilities, failure to supervise. (a statement of claim)

"'The common-law duty of good faith and fair dealing implicit in every contract requires that neither party [will] do anything that will injure the right of the other to receive the benefits of the agreement. . . . Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended.' (Internal quotation marks omitted.) Elm Street Builders, Inc. v. Enterprise Park Condominium Assn., Inc., 63 Conn. App. 657, 665, 778 A.2d 237 (2001).

20. Defendant's unconscionability, as judged at the time of the making of the contract, and the Plaintiff's claim, rests on actions taken by the Defendant during, before and after the making of the contract by reckless abandonment of their fiduciary responsibilities, failure to supervise, and by lying to the Plaintiff about the Plaintiffs credit score which Defendant's did in order that the loan fit the subprime' slot at Long Beach Mortgage Loan Trust 2006-10. In essence, Plaintiffs credit score at the time did not qualify for sub-prime status or could have gotten a lower interest rate. (a statement of claim)  **(Please See Exhibit J and O).**

"'Our Supreme Court . . . stated, in the context of an equitable estoppel claim, that [t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist.' (Internal quotation marks omitted.) SKW Real Estate Ltd. Partnership v. Mitsubishi Motor Sales of America, Inc., 56 Conn. App. 1, 8, 741 A.2d 4 (1999), cert. denied, 252 Conn. 931, 746 A.2d 793 (2000); see also 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 60b, p. 365 & (Cum. Sup. 2001) pp. 385-86.  i.e. Plaintiff asked why his credit score was not valid and about the lower credit score and then accepted it as truth and proceeded.

Defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) have been accused of deceptive loans and loan renegotiations, unjustified legal fees pushing consumers into deceptive, unaffordable loans and workouts, and charging homeowners in default unjustified and excessive legal fees.

Defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) are or were in violation of United States and Connecticut consumer protection and banking laws having conned customers into loans that were clearly unaffordable and unsustainable, turning the American Dream of homeownership into a nightmare. (a statement of claim)

**Specifically:**   The Connecticut Unfair Trade Practices Act ("CUTPA"), Chapter 735 for relief against the Defendant's for violations of Conn. Gen. Stat. 42-110b(a), which prohibits unfair or deceptive acts or practices, for restitution to consumers, for the Defendant's isolations of law, for civil penalties, and for other relief.

When consumers defaulted, the company bullied them into workouts doomed to fail. Defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS ) crammed unconscionable legal fees into renegotiated loans, digging consumers deeper into debt. The company broke promises that homeowners could refinance, condemning them to hopelessly unaffordable loans. (a statement of claim)

## D. CAUSE OF ACTION

Defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) was at Plaintiff side -- **as an insolvency enabler.** (a statement of claim)

Defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) inflated homeowner incomes to qualify them for loans they couldn't pay back and misled consumers about loan terms.

Defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) **stacked the deck and the deal against Plaintiff** and its other customers: (a statement of claim)

Plaintiff asks the court to invalidate this and other loans that violate state law, allowing consumers to shed illegal, unreasonable fees and conditions that leave them at the precipice of foreclosure caused by predatory lending practices that trap consumers on a debt treadmill. For any consumer, the mortgage financing of their home is an extremely important matter and the financing process needs to be clear and transparent. (a statement of claim)

Defendant violated state consumer protection and banking laws by:

Encouraging consumers to take out loans the company knew or should have known they could not afford; Improperly inflating consumers' incomes to qualify them for loans they otherwise could not have received; Providing loans with different and more expensive terms than consumers were promised; Pressuring consumers into mortgages with temporary interest only payment options when the company knew or should have known they could not afford the higher payments that would come due later; Providing variable rate loans to consumers with the assurance they could refinance before interest rates reset, only to later refuse to do so; Demanding Connecticut consumers facing foreclosure pay excessive and inaccurate legal fees in order to reinstate their loans; Promising to help homeowners "in financial difficulty to establish suitable payment plans," but instead demanding loan modifications and repayment plans that were unsustainable, unaffordable or unsuitable. (a statement of claim)

Defendant's are in violation of state consumer protection laws and Plaintiff asks the court for disgorgement of all ill-gotten gains. (a statement of claim)

Defendant's will find it hard to challenge these allegations because many are in line with and come directly from the State of Connecticut and Howard F. Pitkin, Commissioner of Banking of the state of Connecticut Complaint, Plaintiffs **v.** Countrywide Financial Corporation, Countrywide Home Loans, Inc. and Countrywide Home Loans Servicing LP, Defendant's. **(Please See Connecticut v. Countrywide Complaint Exhibit J).**

The Defendant's publicly represented their **respect for human rights**: Defendants blanket policy of Robo Calling the Plaintiff and other customers thousands of times is not respecting human rights. It is a lazy profit oriented way of **mass debt collecting**. Defendant's claim to have a Know Your Customer policy yet to this day Defendant's neither know or want to know Plaintiffs needs or suitability requirements and haven't even met the Plaintiff as espoused here: They know nothing about the Plaintiff.

As part of our broad effort to ensure that respect for human rights is integrated into the business of the firm, JPMorgan Chase has adopted policies and procedures designed to ensure compliance with legal requirements and which seek to prevent our products and services from being used for improper purposes. Such policies and procedures include those contained in our Code of Conduct, our Anti-Corruption, Anti-Money Laundering, Anti-Bribery, and **Know Your Customer** and counter-terror financing policies. **(Please See Exhibit U).**

Deutsche Bank neither knows nor wants to know Plaintiffs needs or suitability requirements and hasn't even met the Plaintiff as espoused here: We require complete, current, and accurate information about our clients to provide them with the most appropriate financial services while safeguarding their assets. We make sure that the collection, use, retrieval, and transfer of client information complies with data protection laws, our policies, and any contractual obligations. They know nothing about the Plaintiff. **(Please See Exhibit V).**

## F. REQUEST FOR RELIEF

WHEREFORE Plaintiff Lundstedt prays for relief as follows: An award in favor of Plaintiff Lundstedt against all Defendant's, jointly and severally, for all damages sustained as a result of Defendant's' wrongdoing, in an amount to be proven at trial, including directives:

**a.** That Defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) produce all records of communication from all parties from six months prior to signing of the loan document on 9-25-2006 up to 9-25-2013, including a record of **all** phone calls made to the Plaintiff by the defendant and their associates at WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS), and, if they can not produce them, that a $250 million punitive fine be paid to the Plaintiff for negligence and knowingly destroying records in order to hide wrong doings. (a statement of claim)

**b.** That foreclosure of Plaintiffs' mortgage be denied and dismissed with prejudice and the contract voided for Fraud and Lack of Consideration.

**c.** That WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) show Original deed, Original debt instrument and all Original assignments to date, which the Plaintiff and the Court have the right to see.

**d.** Plaintiff asks the court to invalidate this and other loans that violate state law, allowing consumers to shed illegal, unreasonable fees and conditions that leave them at the precipice of foreclosure caused by predatory lending practices that trap consumers on a debt treadmill. For any consumer, the mortgage financing of their home is an extremely important matter and the financing process needs to be clear and transparent. Defendant violated state consumer protection and banking laws by: Encouraging consumers to take out loans the company knew or should have known they could not afford; Improperly inflating consumers' incomes to qualify them for loans they otherwise could not have received; Providing loans with different and more expensive terms than consumers were promised; Pressuring consumers into mortgages with temporary interest only payment options when the company knew or should have known they could not afford the higher payments that would come due later; Providing variable rate loans to consumers with the assurance they could refinance before interest rates reset, only to later refuse to do so; Defendant's are in violation of state consumer protection laws and Plaintiff asks the court for disgorgement of all ill-gotten gains. (a statement of claim)

**e. Damages;** That the Defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) pay the Plaintiff Lundstedt the sum of $82,972,345.00 U.S. dollars for actual permanent damages of physical (including permanent high blood pressure) and emotional exasperation, chronic pain, soul murder, loss of business, loss of standing in the community, loss of reputation in the community resulting in unbridled feelings of shame, depression, anxiety, post traumatic banking and sevicer fraud stress disorder (a statement of claim), **(Please See Exhibit R)**, created by years of defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) bombardment of threats and phone calls made, where as defendant never asked the Plaintiff how such low level aggression of thousands of phone calls made by the defendant to the Plaintiff would or could affect the Plaintiff (a statement of claim) . In other words, they used a cookie cutter approach because they did not want to spend the money for one on one consultation, which, by law, every financial professional is required to do. (a statement of claim) and

**f. Punitive damages;** That punitive damages in the amount of $378,351,732.00 U.S. dollars be paid by Defendant's WAMU /(JP Morgan Chase/Long Beach Mortgage Loan Trust and SPS) to Plaintiff Lundstedt for their horrifying global behavior consisting of but not limited to an apocalyptic level of uncontrollable greed, wanton disregard for their clients well being beyond anything ever seen in the history of mankind resulting in the destruction of millions of lives and dreams guaranteed by simple basic laws of civilization, and to set an example for the rest of that wealthy industries' actors, indeed, those very leaders who were entrusted with the safety of the earths population. (a statement of claim)

**g.** Attorneys' fees and costs; and

**h.** Prejudgment interest at the maximum legal rate; and

## F. REQUEST FOR RELIEF

i. Such other and further relief as the Court may deem just and proper; and

j. Complete repair of Plaintiffs' credit score with all reporting agencies including the top US three.

**JURY TRIAL DEMANDED**

**Oral Argument Requested**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable by jury.

## G. JURY DEMAND

Do you wish to have a jury trial?   Yes __X__   No _____

_____
Plaintiff's Original Signature

Peter Lundstedt (Pro Se)  Plaintiff
Printed Name

15 Lafayette CCt. 3A

Greenwich, CT 06830

Cell 203-733-0311  H 203-861-0035
Plaintiff's full address and telephone

plundstedt@gmail.com
Email address if available

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at __Greenwich, CT__ on __9-27-2013__.
                    (location)                              (date)

_____
Plaintiff's Original Signature