UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PETER LUNDSTEDT,
    *Plaintiff*,

v.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, *Trustee for Long Beach
Mortgage Loan Trust, et al.*,
    *Defendants*.

No. 3:13-cv-001423 (JAM)

**RULING GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

This case arises out of a mortgage loan issued to *pro se* plaintiff Peter Lundstedt in 2006. Plaintiff alleges that he was lied to about his credit score and that he was fraudulently induced to sign a high-interest mortgage loan when he should have been eligible for a mortgage loan on more favorable terms. He also alleges that, after he defaulted on the loan, he received "hundreds if not thousands" of phone calls from defendants in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. I will dismiss all of plaintiff's claims except for his claims under the TCPA and for negligent infliction of emotional distress against defendant J.P. Morgan Chase Bank ("Chase").

### BACKGROUND

Plaintiff Peter Lundstedt, a disabled veteran, signed a subprime mortgage contract in September 2006, apparently with Washington Mutual ("WaMu") as the originator. Plaintiff alleges that WaMu lied to him about his credit score, telling him it was 100 points below the real score, and therefore induced him to sign a mortgage loan with a very high interest rate. He sought to confirm his credit score at the time with credit reporting agencies such as Equifax, and he then informed WaMu that the score told to him was incorrect. WaMu responded that it had its

own credit assessment, and did not accept plaintiff's arguments. He then accepted the loan offer from WaMu.

Some defendants, seemingly including Deutsche Bank National Trust Company ("Deutsch Bank") and Select Portfolio Serving Inc. ("Select"), then packaged plaintiff's mortgage loan into an allegedly "fraudulently created SEC-regulated security instrument." Doc. #88 at 3. Plaintiff defaulted on the loan in November 2007. In 2009 at the latest, plaintiff notified defendants that he believed he had been defrauded when he signed the mortgage loan agreement. *See* Doc. #89 at 20. Following plaintiff's default, WaMu allegedly began making numerous phone calls to plaintiff seeking to collect on the debt.

During the financial crisis of 2008, WaMu failed and was taken into receivership by the Federal Deposit Insurance Corporation ("FDIC"). The FDIC then sold substantially all of WaMu's assets and liabilities to defendant Chase.[1] Having acquired plaintiff's mortgage, Chase then allegedly began making similar calls to plaintiff. Plaintiff contends that, while most of these calls were to his residence, some were to his cell phone. He also stated at oral argument that "you could tell it was a computer [calling him] because you would be waiting and waiting and waiting, you know. And then somebody would come on." Doc. #89 at 24. He also alleges that, as defendants knew, he had "past and current injuries" that made him more susceptible to harm as a result of these calls, and that they resulted "in illness and bodily harm, where plaintiff [cannot] sleep, has frequent nightmares, [cannot] engage in personal or emotional or physical relationships, [and] has debilitating depression and anxiety resulting in isolation from Plaintiff's community because of the Defendant's actions." Doc. #88 at 12.

---

[1] Though plaintiff does not allege any facts regarding WaMu's failure and subsequent receivership by the FDIC, the Court "may judicially take notice [of] a fact that is not subject to reasonable dispute because it: . . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The facts surrounding WaMu's collapse cannot be reasonably disputed. *See* "Status of Washington Mutual Bank Receivership," The Federal Deposit Insurance Corporation, https://www.fdic.gov/bank/individual/failed/wamu_settlement.html (accessed May 31, 2016).

Plaintiff filed this lawsuit in September 2013. He alleges six different claims, including that defendants committed "breach of contract fraud" (Count One); that defendants negligently inflicted emotional distress (Count Two); that defendants violated the TCPA (Count Three); that defendants violated the Bank Secrecy Act (Count Five); and that defendants violated the Financial Institutions Reform, Recovery and Enforcement Act (Count Six).[2] Defendants have moved to dismiss plaintiff's complaint in its entirety. Docs. #92, #93.

## DISCUSSION

The principles governing this Court's consideration of a Rule 12(b)(6) motion are well established. First, the Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). But "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In addition, a *pro se* plaintiff's complaint should be construed liberally and interpreted to raise the strongest arguments that its wording suggests. *See, e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014); *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

### Count One - "Breach of Contract Fraud"

Plaintiff alleges that the defendant lender "outrageously lied to Plaintiff at the contract's origination (called Mortgage Loan Origination Fraud)." Doc. #65 at 9, ¶ 3. From plaintiff's statements at oral argument, it appears that this defendant lender was WaMu. As plaintiff does not allege any contractual obligation that any defendant breached, I construe this as a claim of fraud. But this claim is barred by Connecticut's three-year statute of limitations for tort claims,

---

[2] Plaintiff also alleges in Count Four that Chase is WaMu's successor-in-interest, and is therefore liable for WaMu's conduct.

Conn. Gen. Stat. § 52-577. Even if I were to accept plaintiff's argument that the cause of action did not accrue until plaintiff discovered the fraud in March 2009, plaintiff filed this case in September 2013, well beyond the three-year statutory period.

Plaintiff contends that the litigation stay during defendant WaMu's bankruptcy proceeding, which was ongoing from September 28, 2008 through March 19, 2012, would have tolled the statute of limitations, pursuant to 11 U.S.C. § 108(c), which extends certain filing deadlines for civil actions against debtors. Doc. #103 at 16. But the Second Circuit has discounted this argument. In *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067 (2d Cir. 1993), the court concluded that "§ 108(c) does not provide for tolling of any externally imposed time bars, such as those found in . . . statutes of limitations" and that the bankruptcy statute "only calls for applicable time deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay, if any such deadline would have fallen on an earlier date." *Id.* at 1073; *see also In re Parmalat Sec. Litig.*, 493 F. Supp. 2d 723, 732 n. 51 (S.D.N.Y. 2007). Because plaintiff claims that the bankruptcy stay ended on March 19, 2012, plaintiff would have had to file his claim by April 18, 2012. Instead, he waited 17 more months before filing, and therefore his action here is not made timely by the fact of any bankruptcy stay. *See Franco v. Bradlees, Inc.*, 2005 WL 2338889, at *3 (D. Conn. 2005) (applying *Aslandis* rule to Connecticut's statute of limitations).

A court may permit equitable tolling of a filing deadline "where the claimant has actively pursued his judicial remedies by filing a defective pleading or where he has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Seeking to qualify on this basis for equitable tolling, plaintiff points to an emailed motion for an extension of time that he filed with the Connecticut Appellate Court. Doc. #103 at 8, 50. But plaintiff's email does not qualify as a "defective

pleading" sufficient to trigger such tolling, even when viewed liberally in light of plaintiff's *pro se* status, because it does not satisfy the basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Molnar v. Legal Sea Foods, Inc.*, 473 F. Supp. 2d 428, 430 (S.D.N.Y. 2007) (letter to court's *pro se* office inquiring how to "further pursue" discrimination claim was not a "defective pleading" sufficient to toll the statute of limitations); *Dimakos v. New York Police Dep't*, 2006 WL 3437417, at *2 (E.D.N.Y. 2006) (letter to DOJ from plaintiff inquiring how plaintiff could get his job back with the NYPD was not a "defective pleading" sufficient to toll the statute of limitations).

Absent concrete evidence, I further decline to toll the filing deadline based on plaintiff's unsupported contentions that his failure to timely file was due to health impairments. *See* Doc. #103 at 17. Accordingly, I dismiss Count One as to all defendants because it was not timely filed and is barred by the statute of limitations.

### *Count Two - Negligent Infliction of Emotional Distress*

Plaintiff further contends that defendants negligently inflicted emotional distress upon him by making "hundreds, if not thousands of phone calls" following his default. Doc. #88 at 11. He alleges that, because of these phone calls, he cannot "sleep, has frequent nightmares, [cannot] engage in personal or emotional or physical relationships, [and] has debilitating depression and anxiety resulting in isolation." *Id.* at 12. In Connecticut, to establish negligent infliction of emotional distress, a plaintiff must show that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Packer v. SN Servicing Corp.*, 2008 WL 359411, at *12 (D. Conn. 2008); *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 444 (2003).

Plaintiff contends that he suffered physical and psychological injuries as a result of his service in the military, and that defendants nonetheless engaged in harassing debt collection practices that would foreseeably exacerbate these injuries and cause plaintiff significant distress. As a preliminary matter, plaintiff conceded at oral argument that only Chase and its predecessor, WaMu, actually called him. Though he argues that the other defendants were also "in on it," Doc. #89 at 23, he does not plausibly allege that either Deutsche Bank or Select facilitated or were even aware of these multitudinous phone calls. Insofar as plaintiff claims that these defendants are liable because they failed to stop Chase from initiating the calls, his argument must also fail. A party is generally under no duty to act to protect another party from harm. *See Doe v. Saint Francis Hosp. and Medical Center*, 309 Conn. 146, 175 (2013); Restatement (Second) Torts § 314.  Plaintiff has not pointed to any exceptions to this general rule. The emotional distress claim will therefore be dismissed against Deutsche Bank and Select.

Plaintiff does allege, however, that Chase and WaMu actually made many of the calls. Plaintiff contends that Chase, having purchased the assets of WaMu, is its successor-in-interest and therefore liable for WaMu's wrongdoing as well as its own. But when a bank fails and is taken into receivership by the FDIC, a plaintiff must exhaust his administrative remedies under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821 *et seq.*, before bringing a lawsuit asserting a right to any of its assets. *See* 12 U.S.C. § 1821(d)(13)(D); *McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1077 (9th Cir. 2003). WaMu failed in 2008, and was taken into receivership by the FDIC. Even if the FDIC sells the failed bank's assets, the FIRREA procedure still applies. *See Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 446-50 (E.D.N.Y. 2010) (plaintiff could not sue Chase for the wrongdoing of WaMu before WaMu's failure without exhausting administrative remedies under FIRREA). Plaintiff has not exhausted these administrative remedies, and I will therefore dismiss his claims

against Chase to the extent he seeks to establish liability against Chase for any of WaMu's wrongdoing. Since plaintiff styles his "successor-in-interest" argument as a separate claim in Count Four, I will also dismiss that count for the same reason.

Chase may still be liable for any telephone calls that it made independent of WaMu. Plaintiff alleges that Chase engaged in an unreasonable, abusive practice of calling him repeatedly. Incorporating plaintiff's allegations at oral argument for clarification, he further alleges that he informed Chase of his existing infirmities and that the calls had damaging psychological effects. Chase relies on *Wilson v. Jefferson*, 98 Conn. App. 147, 163 (2006), to argue that its alleged conduct was not unreasonable. In that case, the appellate court affirmed a directed verdict that a defendant's "use of the legal process to enforce her rights as landlord, without more, does not constitute unreasonable conduct." *Id.* Plaintiff's allegations, however, extend beyond the mere use of legal process, and at least suggest an unreasonable, abusive course of conduct. At this stage, I cannot conclude, as a matter of law, that making hundreds or thousands of debt-collection phone calls could not lead to an unreasonable risk of serious distress.

Chase contends that, even if its conduct produced an unreasonable risk of emotional distress to plaintiff, such distress was not foreseeable. Whether the harm was foreseeable often turns on a defendant's knowledge. Plaintiff alleges that he informed Chase of his vulnerabilities and the effects the calls were having on him. The question is "would the ordinary [person] in the defendant's position, *knowing what he knew or should have known* anticipate that harm of the general nature of that suffered was likely to result." *Vendrella v. Astriab Family Ltd. Partnership*, 311 Conn. 301, 335-336 (2014) (emphasis added). While it may be an unusual plaintiff who would suffer severe distress as a result of these phone calls, plaintiff here has alleged that Chase had enough information that it should have known him to be vulnerable.

Therefore, I will allow plaintiff's negligent infliction of emotional distress claim to proceed against Chase.[3]

### Count Three - Telephone Consumer Protection Act

Plaintiff's third cause of action is for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. Specifically, plaintiff alleges violation of § 227(b)(1)(A)(iii), which prohibits use of an automatic telephone dialing system ("ATDS") to call a mobile device without express consent of the called party.[4] The statute provides a private right of action to recover damages for violations of the statute. 47 U.S.C. § 227(b)(3).

Plaintiff did not plead in his complaint either that he was called on a cellular phone or that defendants used an ATDS. Instead, simply alleging that defendants used an ATDS, he makes a "threadbare recital" of the statutory element. *Iqbal*, 556 U.S. at 678; *Baranski v. NCO Fin. Sys., Inc.*, 2014 WL 1155304, at *6 (E.D.N.Y. 2014). Normally, this would be fatal to his TCPA claim. *See McCabe v. Caribbean Cruise Line, Inc.*, 2014 WL 3014874, at *4 (E.D.N.Y. 2014); *Barankski*, 2014 WL 1155304, at *6.

Plaintiff did state at oral argument, however, that "you could tell it was a computer because you would be waiting and waiting and waiting . . . . [a]nd then somebody would come on." Doc. #89 at 24. He also stated that some of the calls went to his cell phone. *Id.* In light of the liberal pleading standard that I must apply in favor of a *pro se* litigant, it is proper for me to

---

[3] To the extent that the complaint could be liberally construed to assert an additional cause of action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, this claim also lacks merit. "It is well established that the FDCPA applies only to persons who collect the debts of others and does not apply to those who collect their own debts." *Caires v. JP Morgan Chase Bank, N.A.*, 880 F. Supp. 2d 288, 306 (D. Conn. 2012) (collecting cases); *see also* 15 U.S.C. § 1692a(6) (defining the term "debt collector" within the FDCPA to mean persons who are involved in the collection of "debts owed or due or asserted to be owed or due *another*." (emphasis added)). The allegations of the third amended complaint demonstrate that plaintiff entered into a loan contract, rendering any of the defendants as plaintiff's creditors, and that Chase arguably took action to enforce the terms of its own loan agreement. Doc. #88 at 8, 11–12. Therefore Chase, as a creditor collecting its own debt, is not liable under the FDCPA. *See Book v. Mortgage Electronic Registration Sys.*, 608 F. Supp. 2d 277, 284 (D. Conn. 2009).

[4] Plaintiff includes allegations that the volume of the phone calls was abusive and oppressive. Any allegation regarding the volume of phone calls and the harm resulting therefrom has been analyzed under Count Two. The TCPA does not offer a remedy for plaintiff's allegations of excessive phone calls.

consider these statements in assessing the sufficiency of plaintiff's allegations. *See Terio v. Carlin*, 2010 WL 4117434, at *1 n.1 (S.D.N.Y. 2010) (considering the *pro se* plaintiff's statements at oral argument in determining the meaning of the pleading); *see also Platsky v. C.I.A.*, 953 F.2d 26, 28 (2d Cir. 1991) (*pro se* plaintiff should have been given leave to amend "inartfully pleaded" generalized allegations where his statements at oral argument made clear he had in mind "definite acts by which the defendants allegedly caused him harm"). In his response to the motions to dismiss, plaintiff also stated that the person on the other end of the line would say, "We can't help [calling repeatedly] because it's automatic." Doc. #103 at 3; *see also Flowers v. Ercole*, 2009 WL 2986738, at *16 (S.D.N.Y. 2009) (considering factual statements made by *pro se* plaintiff in a memorandum of law as part of the record). These allegations raise a plausible inference that Chase was using an ATDS to call plaintiff on his cell phone. Plaintiff again concedes, however, that Deutsche Bank and Select did not actually make the calls, and does not allege facts suggesting the calls were in anyway made at their direction. *Cf. Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 746 (D. Md. 2008) (holding that the TCPA does not provide for aiding and abetting liability). I will therefore dismiss the TCPA claims against Deutsche Bank and Select.

   Plaintiff brings his TCPA claim against Chase both for calls Chase allegedly made to him and prior calls made by WaMu. For the same reasons that he cannot bring a successor-in-interest claim against Chase for WaMu's negligent infliction of emotional distress, he also cannot bring one for WaMu's violations of the TCPA. Plaintiff's TCPA claim for actions actually taken by Chase, however, will survive.

   ***Count Five - Violation of Bank Secrecy Act***

   Plaintiff further contends that defendants violated the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5318(g) and 5322(a), by failing to file Suspicious Activity Reports based on plaintiff's

complaints. The BSA does not, however, create a private right of action. *See Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326-327 (D. Conn. 2008). Courts have also refused to create a duty of care predicated on the BSA's statutory requirements. *See In re Agape Litigation*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010). Because plaintiff has no right of action under the BSA, I will dismiss Count Five.

### *Count Six - Violation of Financial Institutions Reform, Recovery and Enforcement Act*

Lastly, plaintiff contends that defendants have violated FIRREA. Defendants move to dismiss this count on the grounds that FIRREA does not provide plaintiff with a private right of action. I agree.

Only two provisions of FIRREA expressly grant a private right of action. *See Mosseri v. FDIC*, 2001 WL 1478809, at *4 (S.D.N.Y. 2001). These provisions create causes of actions for the enforcement of lower-income occupancy requirements, and for claims arising from discrimination against whistleblowers, respectively. *See* 12 U.S.C. § 1441a(c)(11)(B); 12 U.S.C. § 1441a(q). Plaintiff appears to argue that 12 U.S.C. §§ 1833a and 4201 provide him a private right of action for fraud. *See* Doc. #103 at 35. He is mistaken. Section 1833a does create civil liability for fraud, but the statute's plain text clarifies that "[a] civil action to recover a civil penalty under this section *shall be commenced by the Attorney General.*" 12 U.S.C. § 1833a(e) (emphasis added). Plaintiff is also correct that § 4201(a) provides that "[a]ny person may file a declaration of a violation giving rise to an action for civil penalties under section 1833a of this title." He ignores, however, § 4201(b), which clarifies that this declaration must first be filed with the Attorney General, rather than first filed as a lawsuit in federal court. These provisions do not explicitly permit plaintiff to bring his claims under FIRREA. Further, since the statutory text clearly contradicts plaintiff's claim to a private right of action, I also cannot conclude that these statutes create an implied right of action. I will therefore dismiss Count Six.

## CONCLUSION

Plaintiff's fraud claim is barred by the statute of limitations, and he has no private right of action to bring claims under either the BSA or FIRREA. He has otherwise alleged no basis for liability for either Deutsche Bank or Select. On the other hand, the complaint does state plausible grounds for relief against Chase for negligent infliction of emotional distress and for violations of the TCPA.

Accordingly, the motion to dismiss of Deutsche Bank and Select (Doc. #92) is GRANTED. Deutsche Bank and Select shall be terminated as defendants. Chase's motion to dismiss (Doc. #93) is GRANTED as to Counts One, Four, Five and Six, but DENIED as to Counts Two and Three. Plaintiff's various pending motions (Docs. #111, #116, #119, #120, #121, #126, #132, and #136) are DENIED as moot because they either would not affect my ruling on this motion, or I will otherwise grant the relief requested. The stay of discovery, Doc. #75, is hereby VACATED, and the parties shall meet and confer and file a Rule 26(f) report by June 23, 2016.

It is so ordered.

Dated at New Haven this 2nd day of June 2016.

/s/      *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge