***United States District Court***

***District of Connecticut***

| | | |
|---|---|---|
| PETER LUNDSTEDT, | : | |
| Plaintiff, | : | |
| | : | Civil Case No. 3:13-CV-1423-JAM |
| v. | : | |
| | : | |
| JP MORGAN CHASE BANK, ET. AL. | : | |
| Defendants. | : | Date:  August 21, 2018 |

MOTION FOR DIRECT ENTRY OF JMOL UNDER RULE 50

OR UNDER A RULE 59 AMENDMENT

## RULE 50 MOTION FOR

## JUDGMENT AS A MATTER OF LAW (JMOL)

### Introduction

The plaintiff presents the Court with the following deep issues and tough questions:  Under state law Substitute House Bill No. 6131, Public Act No. 01-34 (2, 5, 8, 9), An Act Concerning Abusive Home Loan Lending Practices, it states that: When making a high-cost home loan, **a lender may not:** (2) sell or otherwise assign the loan without giving prescribed notice to the purchaser or assignee that the loan is subject to the rules of the act and the purchaser or assignee could be liable for any claims the borrower has against the lender;  This gives plaintiff a private right of action.  Neither  Chase nor Deutsche Bank gave plaintiff a CT Pa 1-34(2) Notice.  Did Chase and Deutsche Bank violate CT Pa 1-34(2)? How does that affect Deutsche Banks standing in state court to bring a foreclosure action?  Was the judgment in state court invalid?

**5.** make the loan unless the lender reasonably believes that the borrower will be able to make the loan payments, based on the borrower's income, debts, employment status, and other financial factors. The borrower is presumed to be able to make the payments if his monthly debts, including the mortgage, are not more than 50%, [36% by CT State Banking rules], of his gross monthly income; Here the original loan had a debt to loan value above 50% and the modified Note had a debt to loan value of over 75%.  The loan was too big for the plaintiff and he quickly defaulted a year later.  Did Chase and Deutsche Bank violate CT Pa 1-34(5)?

**8.** make a high-cost home loan that refinances an existing loan unless the new loan will truly benefit the borrower.  Here, the second modified  new installment contract with 341 payments and a materially different face value was made by Deutsche Bank and was reviewed by Chase.  This Note that forever terminated the 2006 terms, conditions and material face value was the only valid contract terms and had a debt to income

*ratio of over 75%. Did Deutsche Bank violate CT Pa 1-34(8) because of that? Did Chase have a duty to address the violation if it knew about it? How would that affect Chases standing to sue in CT state court? If Chase was in violation of the FDCPA, did Chase have standing in the state action? If Chase never noticed plaintiff of a default, did Chase have standing in the state court? Did Chase spend five years conducting a wrongful foreclosure on the plaintiff? Did Chase not send plaintiff a notice of default because that would be noticing the plaintiff that he had defaulted on terms and conditions and a materially different face value that had been terminated by the new modified installment agreement? Did Chase ever disclose the modified Note to the state court during their servicing of plaintiffs loan? Which loan was Chase servicing? Did Chase not disclose the materially different modified Note in order to conceal the modified Note because it violated law? Did plaintiff suffer in hell for five years because Chase was concealing the modified Note rather that addressing the illegality of the Note? Does that equate to wrongful foreclosure? Did SPS, Inc. continue in Chase's footsteps by not addressing the illegal modified Note? Was SPS concealing the Modified Note? Does that equate to wrongful foreclosure for the five years that SPS serviced the plaintiffs' loan? Would that cause liability and proximate cause?*

**9.** *make a high-cost home loan with an unconscionable interest rate. The interest rate must be based on appropriate factors, such as creditworthiness, other risk-related standards, and sound underwriting, or it may be considered unconscionable; Was the interest rate on plaintiffs first Note, that was above the 50% debt to income ratio limit, in violation of CT Pa 1-34(9)?*

*Under state law Substitute House Bill No. 6131, Public Act No. 01-34 (2, 5, 8, 9), An Act Concerning Abusive Home Loan Lending Practices, if there is a jurisdictional failing appearing on the face of the record, the matter is void, subject to vacation with damages, and can never be time barred, does Pa 1-34have a statute of limitations? Did the Connecticut Legislature intend to make CT Pa 1-34 a valid law? These are*

*issues that no one can run away from because they all represent liability for the violations of law.  Is there a*

*lot of room for equity for the defendants' actions.  See the bills voting record below.* <sub>Haps.</sub>

**JUDICIARY COMMITTEE**

**VOTE TALLY SHEET**

**Bill No.:**   HB-6131          **Amendment Letter:**

AN ACT CONCERNING ABUSIVE HOME LOAN LENDING PRACTICES.

**Chair:**  LAWLOR, M.          **Motion:**   JARJURA, M.          **Second:**  AMANN, J.

**Action:** Joint Favorable

**Language Change:**

| TOTALS | Voting | | Yea | | Nay | | Abstain | | Absent and Not Voting | | Voice Vote | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 38 | | 38 | | 0 | | 0 | | 3 | | | |

| | yea | nay | abstain | absent | | | yea | nay | abstain | absent |
|---|---|---|---|---|---|---|---|---|---|---|
| Sen. **Coleman**, E. 2 | X | | | | | Rep. **Klarides**, T. 114 | X | | | |
| Rep. **Lawlor**, M. 99 | X | | | | | Rep. **Martinez**, J. 95 | X | | | |
| Sen. **Looney**, M. 11 | X | | | | | Rep. **Michele**, R. 77 | X | | | |
| Rep. **Feltman**, A. 6 | X | | | | | Rep. **Murphy**, C. 81 | X | | | |
| Sen. **Kissel**, J. 7 | X | | | | | Rep. **Nystrom**, P. 46 | X | | | |
| Rep. **Farr**, R. 19 | X | | | | | Rep. **O'Neill**, A. 69 | X | | | |
| Rep. **Abrams**, J. 83 | X | | | | | Rep. **Powers**, C. 151 | X | | | |
| Rep. **Amann**, J. 118 | X | | | | | Sen. **Roraback**, A. 30 | X | | | |
| Rep. **Berger**, J. 73 | X | | | | | Rep. **Rowe**, T. 123 | X | | | |
| Rep. **Bernhard**, G. 136 | X | | | | | Rep. **Serra**, J. 33 | X | | | |
| Rep. **Cafero**, L. 142 | X | | | | | Rep. **Spallone**, J. 36 | X | | | |
| Sen. **Cappiello**, D. 24 | | | | X | | Rep. **Staples**, C. 96 | X | | | |
| Rep. **Cocco**, J. 127 | | | | X | | Rep. **Stone**, C. 9 | X | | | |
| Rep. **Conway**, T. 75 | X | | | | | Rep. **Winkler**, L. 41 | X | | | |
| Sen. **Daily**, E. 33 | X | | | | | | | | | |
| Rep. **Dandrow**, A. 30 | X | | | | | | | | | |
| Rep. **DeMarinis**, N. 40 | | | | X | | | | | | |
| Rep. **Dillon**, P. 92 | X | | | | | | | | | |
| Rep. **Doyle**, P. 28 | X | | | | | | | | | |
| Sen. **Finch**, B. 22 | X | | | | | | | | | |
| Rep. **Fox**, J. 144 | X | | | | | | | | | |
| Rep. **Godfrey**, B. 110 | X | | | | | | | | | |
| Rep. **Green**, K. 1 | X | | | | | | | | | |
| Rep. **Hamm**, G. 34 | X | | | | | | | | | |
| Rep. **Hamzy**, W. 78 | X | | | | | | | | | |
| Rep. **Hyslop**, W. 39 | X | | | | | | | | | |
| Rep. **Jarjura**, M. 74 | X | | | | | | | | | |

Vote date:04/17/2001 01:01:00 PM                    Correction date:

https://www.cga.ct.gov/2001/ts/h/2001HB-06131-R00JUD-TS.htm

*Defendants will object by saying the issue was already ruled on and this would raise res judicata concerns.*

*However, only a simple foreclosure was ruled on in the state case, nothing else, there was never any decision*

*handed down by any appellate or trial judge who was identified, and only the breach of contract claim was*

*ruled on in the federal court as being out of time, nothing else, not the validity of the contracts, just the statute of limitations, which there is none for foreclosures in CT or on CT Pa 1-34 that does authorize private actions.*

*The plaintiff presents the Court with the following issue:  JMOL.  Under federal law, Rule 50(e) says that if the court denies the motion for judgment as a matter of law, the appellate court may order a new trial, direct the trial court to direct the entry of judgment.  Here, after ten years of excruciatingly hard work under extreme psychological and physiological conditions that constantly challenged the plaintiff, there was hardly any or even none of plaintiffs' evidence admitted, due to any number of issues, because of numerous procedural deficiencies where no harmless error occurred.*

*After viewing what evidence was left out in plaintiffs recent objection, should this Court, upon its review, grant a JMOL to the plaintiff in the interests of justice, time, public policy and judicial economy or as an alternative grant a Rule 59 Motion to alter or amend the jury verdict since the jury awarded the plaintiff with the deep issue or core element of the case, "negligent" infliction of emotional distress?  Is it reasonable, with the exhibits in plaintiffs' objection, to conclude that Chase did not inflict ANY emotional distress in the plaintiff?  Is it reasonable to have ruled that Chase did not have ANY liability?  Should the jury instructions contain Proximate and ultimate causation?*

### Discussion

*The Court got the core of the case right from the beginning and the jury backed the judge up on it.  Even the defense got it right on the core issue. Plaintiff won on the core issue.  The Judge saw emotional distress and the Jury saw emotional distress and ruled plaintiff had proven he suffered extreme emotional distress.  That was the deep issue of the case.  That only left "who did it or some of it or all of it."  Or rather, who did or was responsible for **most of it.**  Was it proximate or ultimate causation?  Jury instructions were inadequate*

because no one is 100% responsible because there are other stressors in everyone's lives and each person reacts differently.  Using a 100% standard defies common sense.

Surly a jury would have ruled for the plaintiff had the jury instructions asked if the calls from Chase inflicted a lot of emotional distress.  All or none was not reasonable.  Neither was it reasonable to not let plaintiff get the discovery he needed in, even after he filed several motions to compel.  As to the liability and causation elements of NIED, plaintiffs' representative at trial was severely lacking while the defense ran wild with how they "intended" to do good to the plaintiff by calling him hundreds of times and sending him fraudulent letters that asked for the impossible.  See other called peoples objections in plaintiffs' Exhibits Objection.

The purpose and number of calls presented by the defendant, regretfully, were a complete fabrication because plaintiff had impeachable evidence of other calls that were left out at trial.  Plaintiff was confused and disoriented and was missing facts when discovery was closed on Jan 31-2017, which plaintiff did not fully comprehend, because he hardly knew what was going on because he had been diagnosed with PTSD. See plaintiffs' VA Medical Progress Notes, from 1-20-2017 to 3-30-2017 below, which defendant was provided in discovery, but defendants hardly gave anything to plaintiff, except the self serving call logs and no one can prove who the callers were because the had random caller ID's and because Chases' callers could admit or omit anything they wanted from the logs.  Where Chases Self-Serving Call Logs Hearsay?  Were the Taped Calls Hearsay if we do not know whom plaintiff was even talking to?  Did the taped calls prejudice the plaintiff when he had no opportunity to cross the caller to see if he had been coached before calling plaintiff and why were they tapping the plaintiff in the first place?  Was it entrapment?

**Standard**

The test on a Rule 50 motion is not the strength or weakness of the evidence, but whether the evidence presented was such that a "reasonable juror would have been compelled to accept the view of the moving party." Densberger, 125 F. Supp. 2d at 590 (citing This Is Me Inc., 157 F.3d at 142).  Had the jury seen

*the Objected to omitted evidence, much of which was already filed previously by the plaintiff but never presented to the Jury, could the court reasonably conclude that the preponderance of evidence was such that a jury would have ruled that Chase was liable and causative?   Plaintiff would very much like to avoid a new trial or an appeal.  If not a JMOL, then would a Rule 59 amendment to the judgment on liability and causation be equitable?*

*Could the Court conclude that the probability of a new trial or an appeal might be relatively wasteful in this case if the preponderance of evidence obviously did weigh in the plaintiffs favor?  See plaintiffs' PTSD diagnosis below that occurred at the same time as the confusing close of discovery, on 1-31-2017, by the Magistrate Judge, not the District Judge, who plaintiff thought made all relevant decisions.* **See Exhibits:**

# EXHIBIT 1

## Progress Notes

Printed On Nov 29, 2017

URGENCY:                                            STATUS: COMPLETED

45 Minute Psychiatric Follow up appointment on 01/20/17 09:30
Primary Care Provider:  PCMM Primary Provider: DESAI,UDAY K
PCMM Team: CBC STAMFORD GOLF

Presents for follow up of anxiety and depression.  Endorses he was deposed and
deposed the bank and felt "knocked out" for 3 days.  Had a flare up of PTSD
symptoms.  Says "my pain is somewhat bearable" but I can't function".
Considering filing a C&P claim for PTSD.

Most of today's appointment focused on his interest in exploring how his
personality keeps him from succeeding interpersonally and otherwise.  He
describes being caustic to others to keep them at an arms length as to avoid
being hurt.  Gave homework to be polite to others and observe the reaction.

MENTAL STATUS EXAMINATION: AA+Ox3, casually dressed, well-groomed,
overweight. Attitude is cooperative.  Good eye contact, normal fluent speech.
Normal tandem gait, no abnormal movements noted.  No psychomotor agitation or
retardation. Cognition and memory grossly intact.  Thought process is linear
and goal directed.  Thought content is without suicidal or homicidal ideation.
No psychotic material endorsed or elicited.  Affect is constricted but reactive,
mood is depressed.  Insight and judgment are intact. Impulse control is intact
at present.

Medications:
Active Outpatient Medications (including Supplies):

BUPROPION HCL 150MG 12HR TAB,SA TAKE ONE TABLET BY MOUTH          ACTIVE
   TWICE A DAY FOR DEPRESSION (TAKE IN THE MORNING AND THE
   AFTERNOON)
HCTZ 12.5/LISINOPRIL 20MG TAB TAKE 1 TABLET(12.5MG/20MG)         ACTIVE (S)
   BY MOUTH ONCE DAILY FOR BLOOD PRESSURE/HEART
HYDROCORTISONE 2.5% CREAM APPLY SMALL AMOUNT TO AFFECTED          ACTIVE
   AREA AS DIRECTED APPLY TO SCALY AREAS IN EARS AND ON
   FACE TWICE A DAY FOR 2 WEEKS, THEN  STOP. CAN USE AS
   NEEDED FOR TWO WEEKS AS A TIME, NOT LONGER.
KETOCONAZOLE 2% CREAM APPLY SMALL AMOUNT TO AFFECTED AREA         ACTIVE
   TWICE A DAY TO SCALY AREAS FOR AT LEAST 2 WEEKS THEN USE
   AS NEEDED
KETOCONAZOLE 2% SHAMPOO SHAMPOO CAPFUL INTO AFFECTED AREA         ACTIVE
   MONDAY, WEDNESDAY AND FRIDAY TO SCALP,LATHER AND LEAVE
   ON FOR 5-10 MINUTES IN THE SHOWER THEN WASH OFF
LORAZEPAM 0.5MG TAB TAKE ONE TABLET BY MOUTH ONCE DAILY AS        ACTIVE
   NEEDED FOR ANXIETY OR INSOMNIA
NIACIN (SLO-NIACIN) 750MG TAB,SA TAKE TWO TABLETS BY MOUTH        ACTIVE (S)
   AT BEDTIME
PRAVASTATIN 80MG TAB TAKE ONE-HALF TABLET BY MOUTH AT             ACTIVE
   BEDTIME FOR CHOLESTEROL
SERTRALINE HCL 100MG TAB TAKE ONE TABLET BY MOUTH EVERY           ACTIVE

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
| --- | --- |
| LUNDSTEDT, PETER SANFORD<br>PO BOX 8122<br>GREENWICH, CONNECTICUT  06836 | Printed at NEWINGTON |

Page 46

# EXHIBIT 2

## Progress Notes

Printed On Nov 29, 2017



SSN: ▓▓▓▓▓▓
DOB: ▓▓▓▓▓▓▓
Gender: ▓▓▓

PCL-5 Score:  65

Cluster B (items  1-5) :  17
Cluster C (items  6-7) :   8
Cluster D (items  8-14):  22
Cluster E (items 15-20):  18

Interpretive Statement:
PCL-5 has a total score range of 0-80, with higher scores indicating greater
PTSD symptom severity.

0-10:  no or minimal symptoms reported
11-20:  mild symptoms reported
21-40:  moderate symptoms reported
41-60:  severe symptoms reported
61-80:  very severe symptoms reported

**PTSD Test**

Questions and Answers:

The event you experienced was: Parachute collapsing in the Army, motorcycle
accident in the Army, Grandfather's death, Repeated lying and harassment by
banks (calling hundreds of times)

The event happened: within the past 1-5 years

1. Repeated, disturbing, and unwanted memories of the stressful experience?
   Quite a bit
2. Repeated, disturbing dreams of the stressful experience?
   Quite a bit
3. Suddenly feeling or acting as if the stressful experience were actually
happening again (as if you were actually back there reliving it)?
   Quite a bit
4. Feeling very upset when something reminded you of the stressful
experience?
   Extremely
5. Having strong physical reactions when something reminded you of the
stressful experience (for example, heart pounding, trouble breathing, sweating)?
   Extremely
6. Avoiding memories, thoughts, or feelings related to the stressful
experience?
   Extremely
7. Avoiding external reminders of the stressful experience (for example,
people, places, conversations, activities, objects, or situations)?

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| LUNDSTEDT, PETER SANFORD<br>▓▓▓▓▓<br>GREENWICH, CONNECTICUT  06836 | Printed at NEWINGTON<br><br>Telephone |

Page 44

9

# EXHIBIT 3

## Progress Notes

Plaintiff had great difficulty at trial.

Printed On Nov 29, 2017

Extremely
8. Trouble remembering important parts of the stressful experience? ⟸
Quite a bit
9. Having strong negative beliefs about yourself, other people, or the world
(for example, having thoughts such as: I am bad, there is something seriously
wrong with me, no one can be trusted, the world is completely dangerous)?
Quite a bit
10. Blaming yourself or someone else for the stressful experience or what
happened after it?
A little bit
11. Having strong negative feelings such as fear, horror, anger, guilt, or
shame?
Extremely
12. Loss of interest in activities that you used to enjoy?
Extremely
13. Feeling distant or cut off from other people?
Extremely
14. Trouble experiencing positive feelings (for example, being unable to feel
happiness or have loving feelings for people close to you)?
Quite a bit
15. Irritable behavior, angry outbursts, or acting aggressively?
Quite a bit
16. Taking too many risks or doing things that could cause you harm?
Moderately
17. Being "superalert" or watchful or on guard?
Extremely
18. Feeling jumpy or easily startled?
Quite a bit
19. Having difficulty concentrating?
Extremely
20. Trouble falling or staying asleep?
Moderately

0=not at all  1=a little bit  2=moderately  3=quite a bit  4=extremely

Information contained in this note is based on a self-report assessment and is
not sufficient to use alone for diagnostic purposes. Assessment results should
be verified for accuracy and used in conjunction with other diagnostic
activities and procedures.

10 days before discovery ended.

/es/ JOSHUA E FARBER D.O.
ATTENDING PSYCHIATRIST
Signed: 01/20/2017 10:36

LOCAL TITLE: MENTAL HEALTH ATTENDING PROGRESS NOTE
STANDARD TITLE: MENTAL HEALTH ATTENDING NOTE
DATE OF NOTE: JAN 20, 2017@08:20     ENTRY DATE: JAN 20, 2017@08:20:28
       AUTHOR: FARBER,JOSHUA E MD    EXP COSIGNER:

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| LUNDSTEDT, PETER SANFORD | Printed at NEWINGTON |
| GREENWICH, CONNECTICUT  06836 | |

Page 45

# EXHIBIT 4

## Progress Notes

Printed On Nov 29, 2017

· Outpt. Medication Reconciliation:
   No Discrepancies Found - Med Rec Completed.
      NO DISCREPANCIES FOUND - The patient's medication list/medication
      history to include Local Active VA Prescriptions, Remote Active VA
      Prescriptions, Non-VA medications, Recently Expired VA Prescriptions
      (90-180 days), Recently Discontinued VA Prescriptions (90-180 days),
      and Pending Medication Orders where relevant (e.g., patient is seen
      by multiple providers in the same day) was compared with CPRS and
      reviewed with the patient/caregiver and reconciled. A copy of the
      updated medication list was provided to the patient/caregiver. The
      patient/caregiver was instructed to update this list, discard old
      lists, and take this list to their next appointment, whether with a
      VA or non-VA provider. Any changes in medications and any
      medications discontinued are documented in this note.


/es/ JOSHUA E FARBER D.O.                    Three days after discovery
ATTENDING PSYCHIATRIST                       closed.
Signed: 02/17/2017 09:40

LOCAL TITLE: MENTAL HEALTH ATTENDING PROGRESS NOTE
STANDARD TITLE: MENTAL HEALTH ATTENDING NOTE
DATE OF NOTE: FEB 03, 2017@08:52     ENTRY DATE: FEB 03, 2017@08:52:04
     AUTHOR: FARBER,JOSHUA E MD   EXP COSIGNER:
     URGENCY:                     STATUS: COMPLETED

30 Minute Psychiatric Follow up appointment on 02/03/17 09:30
Primary Care Provider:  PCMM Primary Provider: DESAI,UDAY K
PCMM Team: CBC STAMFORD GOLF

Presents for follow up of anxiety and depression.  Says his friend who's office
he's staying in has been verbally abusive to him, indirectly trying to get him
to leave.  Recently deposed someone from Chase Bank in his case, says his case
is set for summary judgement in April.  Mood is "distressed".  Spends much of
the session expressing that he wonders if he would have recovered from being
depressed by now if the bank didn't harass him.  Says he doesn't think he can
handle working in finance or elsewhere right now, "this case is too heavy   it
takes too much time".  No S/I, forward oriented.

As per a secure message he sent to me, he requests a brain scan due to an
article he read about personality types being determined by brain structure.
Discussed that there are no such studies going on locally and that such
information would likely not inform treatment.

MENTAL STATUS EXAMINATION:  AA+Ox3, casually dressed, well-groomed,
overweight. Attitude is cooperative.  Good eye contact, normal fluent speech.
Normal tandem gait, no abnormal movements noted.  No psychomotor agitation or

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| LUNDSTEDT,PETER SANFORD<br>PO BOX 8122<br>GREENWICH, CONNECTICUT  06836 | Printed at NEWINGTON |

Page 41

# EXHIBIT 5

## Progress Notes

Printed On Nov 29, 2017

/es/ JOSHUA E FARBER D.O.
ATTENDING PSYCHIATRIST

**2 weeks after discovery closed.**

LOCAL TITLE: MENTAL HEALTH ATTENDING PROGRESS NOTE
STANDARD TITLE: MENTAL HEALTH ATTENDING NOTE
DATE OF NOTE: FEB 17, 2017@08:58    ENTRY DATE: FEB 17, 2017@08:58:15
    AUTHOR: FARBER,JOSHUA E MD   EXP COSIGNER:
    URGENCY:                      STATUS: COMPLETED

30 Minute Psychiatric Follow up appointment on 02/17/17 09:00
Primary Care Provider:  PCMM Primary Provider: DESAI,UDAY K
PCMM Team: CBC STAMFORD GOLF   .

Presents for follow up of anxiety and depression.  Ventilates about his case
against JP Morgan Chase.  Had a conference call with a judge about his case
yesterday, summary judgements due in April.  Keeps busy going to the library
researching the case.  Expresses feeling traumatized and humiliated by the
constant calls from WAMU (later taken over by JP Morgan Chase) when he was in
foreclosure.  Feels anxious, has been nail-biting, has a "deep sense of
distress", nightmares of reliving being kicked out of his house, daily panic
attacks.  Also depressed, no S/I.  Preparing in the event he loses his case,
on the list for senior disabled housing in Greenwich.  As of late feels judged
by his friend who is letting him live in his office.

Says he's "somewhat stable" and feels like the medications are helping.

MENTAL STATUS EXAMINATION:  AA+Ox3, casually dressed, well-groomed,
overweight. Attitude is cooperative.  Good eye contact, normal fluent speech.
Normal tandem gait, no abnormal movements noted.  No psychomotor agitation or
retardation. Cognition and memory grossly intact.  Thought process is linear
and goal directed.  Thought content is without suicidal or homicidal ideation.
No psychotic material endorsed or elicited.  Affect is constricted but reactive,
mood is anxious and depressed.  Insight and judgment are intact.  Impulse control
is intact at present.

Medications:
Active Outpatient Medications (including Supplies):

BUPROPION HCL 150MG 12HR TAB,SA TAKE ONE TABLET BY MOUTH        ACTIVE
    TWICE A DAY FOR DEPRESSION (TAKE IN THE MORNING AND THE
    AFTERNOON)
HCTZ 12.5/LISINOPRIL 20MG TAB TAKE 1 TABLET(12.5MG/20MG)       ACTIVE (S)
    BY MOUTH ONCE DAILY FOR BLOOD PRESSURE/HEART
HYDROCORTISONE 2.5% CREAM APPLY SMALL AMOUNT TO AFFECTED        ACTIVE
    AREA AS DIRECTED APPLY TO SCALY AREAS IN EARS AND ON
    FACE TWICE A DAY FOR 2 WEEKS, THEN  STOP. CAN USE AS
    NEEDED FOR TWO WEEKS AS A TIME, NOT LONGER.

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| LUNDSTEDT,PETER SANFORD<br>PO BOX 8122<br>GREENWICH, CONNECTICUT  06836 | Printed at NEWINGTON |

Page 39

12

# EXHIBIT 6

## Progress Notes

VA or non-VA provider. Any changes in medications and any medications discontinued are documented in this note.

/es/ JOSHUA E FARBER D.O.
ATTENDING PSYCHIATRIST
Signed: 09/13/2017 13:56

LOCAL TITLE: VASH PROGRESS NOTE
STANDARD TITLE: SOCIAL WORK NOTE
DATE OF NOTE: SEP 08, 2017@15:07     ENTRY DATE: SEP 08, 2017@15:07:24
     AUTHOR: MESTER,AMY B          EXP COSIGNER:
     URGENCY:                      STATUS: COMPLETED

This writer phoned, left vm message up-dating Veteran that DOH received housing application and being forwarded to Danbury. When received by Danbury, will be able to make appointment for voucher. This writer asked Veteran to please gather requisite documents to be prepared for appointment, this writer asked Veteran to phone if need any help.

/es/ AMY B MESTER, LCSW
LICENSED CLINICAL SOCIAL WORKER
Signed: 09/08/2017 15:09

Receipt Acknowledged By:
09/08/2017 16:06      /es/ JOSHUA E FARBER D.O.
                      ATTENDING PSYCHIATRIST

LOCAL TITLE: HUD VASH ADMISSION NOTE
STANDARD TITLE: MENTAL HEALTH ADMISSION EVALUATION NOTE
DATE OF NOTE: SEP 01, 2017@15:59     ENTRY DATE: SEP 01, 2017@15:59:10
     AUTHOR: MESTER,AMY B          EXP COSIGNER:
     URGENCY:                      STATUS: COMPLETED

Diagnosis:      Posttraumatic Stress Disorder
                Panic Attacks
                Dysthymia
                Lack Of Housing

Encounter:      90 minutes

        Mr. Lundstedt is a 59 year old, Caucasian male Veteran, single, who carries diagnosis of Posttraumatic Stress Disorder; Panic Attacks; Dysthymia and Homelessness. Mr. Hackett is currently homeless and resides in his car in Greenwich, CT.  Veteran has 30% service connection.
        The purpose of this encounter was to complete DOH/J. D'Amelia Housing Authority application, and complete the required admission paperwork.  Veteran has been approved for and admitted to the VASH program today. Veteran needs to

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| LUNDSTEDT, PETER SANFORD<br>PO BOX 8122<br>GREENWICH, CONNECTICUT  06836 | Printed at NEWINGTON |

Page 11

**Legal**

Objection. Under Conn. Law, it takes three elements to prove negligent inflicted emotional distress. Plaintiffs appointed attorney apparently presented as best he could with his shirt hanging out of his pants as the jury looked on, but there was virtually no evidence presented as to who was liable and if they caused the plaintiffs' emotional distress.

**This Motion presents the Court with the following issue:** Rule 50. Under federal law, the court may, on motion, grant a new trial … (A) after a jury trial, for any reason … (d) New Trial on the Court's Initiative or for Reasons Not in the Motion. ...the court, on its own, may order a new trial for any reason that would justify granting one on a party's motions. (e) Motion to Alter or Amend a Judgment.

**Discussion**

A JMOL would also avoid the inevitable revisitation of previously dismissed causes of action that will undoubtedly be submitted for appeal along with several objected to non-harmless errors. For example, plaintiffs' FDCPA claim was valid because Chase was not the owner of the debt and thus it was a very harmful error because the FDCPA could have been one of the jury's tools at trial.

The court evidently initially got it right when it granted plaintiffs second cause of action, NIED. _Plaintiff put the FDCPA claim under NIED for a reason_ because defendant's violated it and emotional distress is covered under the actual damages section. All defendants had to do was look at the assignment to tell who owned the debt, and that was not harmless error.

Objection. Had the jury seen any of plaintiffs' most important exhibits, would they have decided that the preponderance of the evidence did lean, in an inordinate amount, to plaintiffs' side? The plaintiffs' objection to his omitted or "unpresented" material records at trial would have reasonably shown to be in plaintiffs favor. This would be even more evident had proper and very elementary objections been made to much of

*defendants irreverent and inadmissible demonstrative, document and recording exhibits at trial, some of which were blatantly untrue and easily objectable to, and all of which were never discussed with the plaintiff before hand with plaintiffs attorney, and only then on some of the documents the day before the trial.*

*Objection.  Plaintiffs' attorney was unprepared and left out all of plaintiffs' relevant exhibits such as are attached in the above exhibits which plaintiff has notated on the margins to explain each items relevancy.  See plaintiffs' Exhibits Objections in Doc 372 and Doc. 363.*

**Conclusion**

*Plaintiff asks the court to grant of plaintiffs' JMOL  on the two remaining elements that the jury would most surely have marked yes had they seen any of plaintiffs' evidence*.  *A JMOL, or Rule 59 amendment to the judgment, in plaintiffs' favor would by far be the most just, quickest and best use of Court resources.*

*Plaintiff proved to the jury that he suffered extreme emotional distress.  Under Federal law, a factual dispute must be genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Here, the jury hardly saw any of the plaintiffs' proof. The jury then ruled that Chase was not liable or the cause of the plaintiffs distress.*

*Had the jury been able to see the documents above and in Doc 362, and had them properly explained by the plaintiff, would a reasonable jury and a reasonable court conclude that Chase was more than likely liable to and the cause of any of plaintiffs' emotional distress?  Would the omitted evidence in Doc. 362, when considering the interests of justice, public policy and judicial economy, justify the implimentation of the Courts ability to grant a simple and expediant Judgment As A Matter Of Law or as an alternative Rule 59 amendment? Would that tool, at the courts disposal, produce a much more reasonable outcome than the preveous trial produced without the evidence I Doc. 362 that should have been shown to the jury?*

*Would the result of granting a justifiable JMOL or Rule 59 amendment on the side of the plaintiff be the most efficeint, expidiant and just procedure within the Court to bring a more reasonable conclusion to this case?  Would a JMOL be more efficient at setting to rest any appealable issues?  Would those issues be potentially more damaging afterwards such as the resurection of plaintiffs' FDCPA claim, prohibited loan motions, a null judgment motion or procedural motions regarding precedual issues in writing the Modified Note or the foreclosure ceritificaiton on a Note whose terms were invalid or not filing the modification with the court or the town hall land records, ect.?  Defendants and the courts have been putting off addressing the prohibited loans and will have to eventually deal with it. No time like the present as they say.*

*Or would it just be a better business decision to settle outside of court which could seal any resolution?  Would that be better for all parties?  Plaintiff asks the court to issue the plaintiff with a JMOL in his favor reversing the jury's decision on the two elements not decided for the plaintiff  on liability and causation. Here, the case was not ready for the jury.  Numerous mistakes were made that are not harmless error.*

**Request for Relief**

Plaintiff asks Court for the least expensive and the most efficient way to resolve this in order to bring about a competent closure of the entire issues, for everyone. Plaintiff asks Chambers to Grant a JMOL in plaintiffs favor on the two remaining jury elements because, after seeing the preponderance of extremely relevant information attached that should have been presented at trial, it would be the most efficient rout while taking the least amount of the courts resources. [1]  Such other relief, including equitable relief, as the Court may deem just and proper.

---

[1]  See also Traupman v. American Dredging Co., 470 F.2d 736 (2d Cir. 1972) and Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969). Thus, when deciding whether to grant a judgment n. o. v., the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the non-movant the benefit of all reasonable inferences), the trial court should grant a judgment n. o. v. only when **(1) there is such a complete absence of evidence** supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or **(2) there is such an overwhelming amount of evidence in favor of the movant** that reasonable and fair minded men could not arrive at a verdict against him.  Appellate courts have repeatedly stated it is best for the trial judge to take a verdict, and then to pass on the sufficiency of the evidence on a post-verdict motion (i. e., a motion for judgment n. o. v.). The rationale for this is aptly set forth in Wright & Miller:  "If a verdict is directed and the appellate court holds that the evidence was in fact sufficient to go to the jury, an entire new trial must be had. If, on the other hand, the trial court submits the case to the jury, though it thinks the evidence insufficient, final determination of the case is greatly expedited. If the jury agrees with the court's appraisal of the evidence, and returns a verdict for the party who moved for a directed verdict, the case is at an end. If the jury brings in a different verdict, the trial court can grant judgment notwithstanding the verdict. Then if the appellate court holds that the trial court was in error in its appraisal of the evidence, it can reverse and order judgment on the verdict of the jury, without any need for a new trial." Id. at 586.  This Circuit agrees. See Fratta v. Grace Line, Inc., 139 F.2d 743, 744 (2d Cir. 1943) and Lindeman v. Textron, Inc., 229 F.2d 273, 276 (2d Cir. 1956). But see Gratian v. General Dynamics, Inc., 587 F.2d 121, 122 (2d Cir., 1978) and Ianuzzi v. South African Marine Corp., 510 F.2d 950 (2d Cir. 1975) for examples of exceptional situations where a directed verdict is appropriate.

The constitutionality of directed verdicts and judgments n. o. v. is well-established. Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943), settled the constitutionality of directed verdicts, and Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636 (1935), as supplemented by Neely v. Martin K. Eby Construction Co., 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967), established the constitutionality of judgment n. o. v.

17

Because plaintiff is a pro se litigant, his pleadings are —liberally construed‖ and —held to less stringent standards than formal pleadings drafted by lawyers.‖ Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); cf. Fed. R. Civ. P. 8(e) (—Pleadings must be construed so as to do justice.‖).

As a Pro Se plaintiff, I am entitled to a liberal reading and interpretation of my pleadings by Court Officers; Haines v. Kernel~ 404 U.S. 520 (1971), US Supreme Court.   Also see: …"pro se pleadings " must be held to "less stringent standards than formal pleadings drafted by lawyers" and <u>can only be dismissed for failure to state a claim if it appears "beyond doubt that the Plaintiff can prove no set of facts in</u> support of his claim that would entitle him to relief. Estelle, Corrections Director, Et AI. V. Gamble 29 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Plaintiff is a disabled US Army Infantry Veteran who suffered three broken vertebrae due to service connected injuries, including a parachute malfunction, who takes five challenging VA sedative medication's required for symptoms of exposure to years of overwhelming, repetitive distresses, causing intense fear and heightened vigilance, resulting in physical and emotional manifestations caused by distress that would justify procedural leniency.

Plaintiff asks the Court for specific instruction of how plaintiffs' pleadings are deficient and how to repair his pleadings.   Platsky v. CIA. 953 F.2d. 25, "Court errs if court dismisses the pro se litigant without instruction of how pleadings are deficient and how to repair pleadings."

*Plaintiff has read and affirms that this complaint is grounded in fact, to the best of the Plaintiffs' knowledge, information, and belief; and that it is brought in Good Faith.*

*THE PLAINTIFF*

*Respectfully submitted,*

      */ s/*

----------------------------------

*Peter Lundstedt*　　　　　　　　　　　　　　　　　　　　　　　*August 21, 2018*
*Box 8122*
*Greenwich, CT 06836*
*Pro Se Litigant*

### Declaration Under Penalty of Perjury

*The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621. Executed at Greenwich, CT on November 23, 2016.*

*Respectfully submitted,*

*/s/*

--------------------------------

*Peter Lundstedt*                                                                                 *August 21, 2018*
*Box 8122*
*Greenwich, CT 06836*
*Pro Se Litigant*

### Certification

*This is to certify that a copy of the foregoing was mailed to all appearing parties on August 21, 2018 to:*

*Halloran & Sage LLP*
*225 Asylum Street*
*Hartford, CT 06103*


*Respectfully submitted,*

> */s/*

---------------------------------

*Peter Lundstedt*                                                                      *August 21, 2018*
*Box 8122*
*Greenwich, CT 06836*
*Pro Se Litigant*